CAROL A. SOBEL SBN 84483
WESTON ROWLAND SBN 327599
Law Office of Carol A. Sobel
2632 Wilshire Boulevard, #552
Santa Monica, CA 90403
t. 310 393 3055
e. carolsobellaw@gmail.com
e. rowland.weston@gmail.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| TINA BERG,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity, MICHEL MOORE, LAPD CHIEF, sued in his official capacity; OFFICER RICHARDSON, and Does 1-10 inclusive,<br><br>    Defendants. | CASE NO.: **COMPLAINT**<br><br>**42 U.S.C. § 1983: U.S. CONSTITUTION: FIRST, FOURTH, AND FOURTEENTH AMENDMENTS CALIFORNIA CONSTITUTION, ARTICLES 1, §§ 2, 3, 7, 13 CALIFORNIA CIVIL CODE § 52.1; PENAL CODE §409.7 ASSAULT, BATTERY** |

## I.   JURISDICTION AND VENUE

1. This is an action for injunctive relief and damages for violations of Plaintiff's federal and state constitutional and statutory rights. Jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1343 as Plaintiff asserts a claim under 42 U.S.C. § 1983. Jurisdiction also exists pursuant to 28 U.S.C. §§ 2201(a) and 2202, the Declaratory Judgment Act. The Court has supplemental jurisdiction to consider Plaintiff's state law claims under 28 U.S.C. § 1367 as these state law claims arise from the same common nucleus of operative facts as Plaintiff's federal claims.

2. Venue is proper in the Western Division of the Central District of California pursuant to 28 U.S.C. § 1931(b) because the events and conduct giving rise to Plaintiff's claims all occurred in the City of Los Angeles.

## II. INTRODUCTION

3. On June 24, 2022, the Supreme Court issued its decision in *Dobbs v. Jackson Women's Health Organization*, No. 19-1392, 597 U.S. ___ (2022). In Los Angeles, protestors gathered and marched throughout Downtown Los Angeles. Media responded to document the protests.

4. Despite years of massive protests in the City, and despite express warnings of the failures of law enforcement over this time period, the LAPD was not prepared to respond to those protesting *Dobbs*. Starting from the killing of George Floyd in May 2020, one internal and two external reports were critical of the LAPD's response to the Floyd protests and all recommended retraining of officers and command staff in the LAPD on crowd control practices.

5. Significantly, LAPD was specifically criticized for its treatment of reporters covering the protests. Repeatedly, police subjected reporters to physical force, arrest, and prevented reasonable access to police activity in public places. In response to widespread abuses by law enforcement agencies, legislators amended the Penal Code to protect press from police assault and interference with news operations. However, the LAPD did not follow the new law. As the Los Angeles Times described it, "the incident fit a broader pattern of aggressive and seemingly unlawful treatment of journalists by LAPD officers…" See, Kevin Rector, *LAPD Treatment of Journalists Denounced, Again, After Abortion Rights Protest Downtown,* L.A. Times (June 25, 2022), https://www.latimes.com/california/story/2022-06-25/lapd-treatment-of-journalists-denounced-again-after-abortion-rights-protest-downtown

6. The LAPD has a long and entrenched history of using force to obstruct free press. In *Crespo v City of Los Angeles*, 2:00-cv-08869 GHK (RC) C.D. Cal. 2000) the Los Angeles Police Department was sued for clubbing reporters and

shooting them with less lethal weapons during the 2000 Democratic National Convention. The LAPD entered into a settlement with the ACLU, requiring the police recognize the rights of journalists to cover protests even if an unlawful assembly is declared and an order to disperse is given. As part of the settlement, the City also agreed to assign a liaison to work with members of the press and to designate areas for journalists to observe from. In a 2001 Los Angeles Times article retired, Asst. Chief Horace Frank, then a lieutenant, asserted that the settlement did not impose any obligation on the LAPD that it was not already doing. See Leovy, *7 Reporters Settle Suit Over LAPD*, L.A. Times (Nov. 30, 2001), https://www.latimes.com/archives/la-xpm-2001-nov-30-me-9832-story.html

7. Although the LAPD claimed two decades ago that it was already doing what the settlement in *Crespo* required, just a few years later the department was again sued by reporters for violation of their First Amendment rights to cover public protests. This time it involved the LAPD's unprovoked assault on a May Day immigrants rights rally in MacArthur Park. Among the journalists who sued was a camera operator for Fox 11 News who required repeated surgeries for a shoulder injury she suffered when officers knocked her down. *See* Dennis Romero, *Journalist Gets $1.7 Million In Suit Against LAPD Over 'May Day Melee' Response*, LA Weekly (July 9, 2010), https://www.laweekly.com/journalist-gets-1-7-million-in-suit-against-lapd-over-may-day-melee-response/

8. In the 2020 George Floyd protests, the U.S. Press Freedom Tracker identified 23 incidents in the Los Angeles area in which members of the press – both traditionally credentialed and uncredentialed by law enforcement – reported

being arrested, subjected to force, and otherwise prevented from exercising their First Amendment rights.[1]

9. More recently, the LAPD repeated the same unlawful practices during a police action to evict an encampment of unhoused persons at Echo Park Lake in March 2021. According to the U.S. Press Freedom Tracker, 59 journalists were arrested or detained nationwide in 2021 with more than a quarter of that number involving the LAPD at the Echo Park Lake incident.[2]

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff timely filed a claim for damages pursuant to California Government Code § 910, *et seq.* on behalf of herself and all similarly situated persons injured by Defendants' wrongful conduct. The Defendant City denied the claim. The complaint in this action is filed within the allowed time limit.

### IV. PARTIES

#### A. Plaintiff

11. Plaintiff **TINA BERG** is an independent journalist in Los Angeles. On June 24, 2022, as set forth more fully below, Plaintiff was covering demonstrations in Downtown Los Angeles protesting the Supreme Court's decision that day in *Dobbs v. Jackson Women's Health Organization*, overturning the 1973 decision *Roe v. Wade,* providing constitutional protection for abortion.

12. Ms. Berg was assaulted and battered by two Los Angeles Police Department officers as she attempted to film the police making an arrest. At the time, **BERG**'s press credentials were clearly visible around her neck and, in fact,

---

[1] *See* U.S. Freedom Tracker, *Incident Database*, https://pressfreedomtracker.us/all-incidents/?search=&date_lower=2020-05-26&date_upper=2020-06-06&city=Los+Angeles&state= 2

[2] Kristin McCudden, *Another Record Year for Press Freedom Violations in the US*, U.S. Press Freedom Tracker (Jan. 12, 2022) https://pressfreedomtracker.us/blog/another-record-year-for-press-freedom-violations-in-the-us/

she showed them to the officers. She seeks a declaration of her rights, damages and injunctive relief to remediate LAPD policies and practices that resulted in her injury on June 24, 2022. She intends to be present at and report on similar events in the future. Ms. Berg fears that the same unlawful police actions in response to protests will be directed at her and other members of the press unless the Court grants the requested relief to bar the practices, policies, and customs of the Los Angeles Police Department which infringe on the fundamental First Amendment right of the press to be present at and record police actions at protests.

13. Defendant **CITY OF LOS ANGELES** is a municipal corporation duly organized and existing under the Constitution and laws of the State of California. The Los Angeles Police Department is an agency of Defendant City and all actions of the LAPD are the legal responsibility of the City. At all relevant times, Defendant City was responsible for assuring that the actions, omissions, policies, practices, and customs of the LAPD and its employees and agents complied with the laws of the United States and the State of California.

14. Defendant **MICHEL MOORE** was, at all times relevant to this action, the LAPD police chief and a policymaker for the department. He is sued in his official capacity.

15. Defendant **OFFICER RICHARDSON** was at all times relevant to this action, an officer with the LAPD. On June 24, 2022, he was assigned to the protest in Downtown Los Angeles. During that assignment, he deliberately assaulted and battered Plaintiff denying her rights guaranteed under the federal and state Constitution and the statutory laws of California.


17. Plaintiff is informed, believes, and thereupon alleges that **DOES 1 through 10** were agents, servants, or employees of Defendant City and the LAPD. Plaintiffs are ignorant of the true names and capacities sued herein as Does 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. The Doe Defendants are sued in their individual capacities. Doe I is pictured in the photograph below, shoving Plaintiff backwards.



18. Plaintiff is informed, believes, and thereupon alleges that at all times relevant hereto Does 1 through 10, in addition to the named Defendants, are responsible in some manner for the damages and injuries alleged herein.

19. Plaintiff is informed, believes, and thereupon alleges that at all times relevant hereto, Defendants, and each of them, were the agents, servants, and employees of the other Defendants and were acting at all times within the scope of their agency and employment and with the knowledge and consent of their principal and employer. At all times, Defendants acted under the color of state law.

20. Plaintiff is informed, believes, and thereupon alleges that Defendant City's policies and failure of policies, including the failure to train its officers in constitutional responses to the rights of the press at demonstrations, caused the unlawful action taken against Plaintiff.

## V. STATEMENT OF FACTS

21. **Tina-Desiree Berg** is a frontline journalist and a member of the LA Press Club. She always displays her press club credential from a neck-worn lanyard when working in the field. For the last three years, she has been an independent reporter and Status Coup's lead journalist for protests on the West Coast. Many images Ms. Berg and her team document are licensed to major national and local news outlets.

22. On June 24, 2022, after the Supreme court issued its opinion in *Dobbs v. Jackson,* Plaintiff determined that there would be a protest in Downtown Los Angeles. She gathered her equipment and press credentials and arrived at the protest at the federal courthouse sometime around 1 p.m., where she remained in the area until the protestors started marching towards City Hall at around 6 pm. About 30 minutes later, the protestors marched to, and merged with, another crowd at Pershing Square.

23. She continued to follow the protestors as they marched through Downtown Los Angeles. Shortly before 9 pm the protestors arrived at the intersection of 5th and Main. At about the same time, more officers arrived at the scene. The LAPD officers yelled "back up" from multiple locations at the intersection with no single clear direction where protestors or press could move to.

24. Ms. Berg aimed her camera to the northeast end of the intersection where several police were arresting a male who was on the ground. Ms. Berg approached the arrest area, remaining outside the LAPD perimeter. As she filmed, an officer approached her outside of her field of view. Without warning, the officer suddenly struck her face, grabbed her shoulder and shoved her, causing her to lose her footing.

25. Just as Plaintiff got back upright, a second officer, **Defendant Richardson**, grabbed her from behind, shoved and then pushed her sharply in the ribs, ultimately pushing her down to the pavement. At all times, her press credentials were visible. As a result of the LAPD Officers' use of force, Ms. Berg had injuries to her mouth, knee, outer thigh and wrist as well as abrasions on her ankle.

## VI. SENATE BILL 98

26. In 2021, California Governor Newsom signed into law SB 98, ensuring protections for the press to observe and record law enforcement activities at public protests. The Legislature recognized that, "[w]hile [existing] California law protects members of the press from being stopped when entering closed areas during emergencies and natural disasters to gather information, these protections don't extend to protest events such as demonstrations, marches, protests, or rallies where individuals largely engage their First Amendment right to speech."

27. The bill's author stated that law was enacted in response to widespread assaults and arrests of reporters covering the protests in response to the killing of George Floyd. "In California and across the country police have arrested, detained, and have physically assaulted journalists with rubber bullets, pepper spray, tear gas, batons, and fists. In many cases there are strong indications that the officers injuring journalists knew their targets were members of the press. Members of the press risk their personal safety and wellbeing each time they attend protest events to get the public the information they need, but rubber bullets, teargas, and even arrest cannot be the norm for an essential pillar of our democracy." *Id.*

28. SB 98 SEC. 2. Added Section 409.7 to the Penal Code, which reads as follows:

> 409.7. (a) If peace officers … close the immediate area surrounding any emergency field command post or any other command post, or establish a police line, or rolling closure at a demonstration, march, protest, or rally where individuals are engaged in activity that is protected pursuant

to the First Amendment to the United States Constitution or Article I of the California Constitution, the following requirements shall apply:

> (1) A duly authorized representative of any news service, online news service, newspaper, or radio or television station or network may enter the closed areas described in this section.
>
> (2) A peace officer or other law enforcement officer shall not intentionally assault, interfere with, or obstruct the duly authorized representative of any news service, online news service, newspaper, or radio or television station or network who is gathering, receiving, or processing information for communication to the public.

29. In early December 2021, the Los Angeles Police Commission approved a Notice from Chief Moore to all Los Angeles Police Department personnel concerning the right of members of the press, defined broadly (with or without official police-issued credentials), to access incident areas, especially at protests, without fear of arrest or assault by the police. Specifically, the Notice stated that it was issued to implement the legislative mandate of SB 98. The Notice is attached at Exhibit A and was obtained from Defendant City's website at: http://www.lapdpolicecom.lacity.org/121421/BPC_21-233.pdf

30. More than a year earlier, on October 30, 2020, after multiple complaints concerning the LAPD treatment of members of the press during the George Floyd protests, the LAPD issued a notice to all department personnel from the Chief's office (DOC Communications Division), affirming the right of the press to access and document police activity at protests. The Notice provided that, while individuals who identify as press may be asked for their credentials, the lack of press credentials does not bar a person from acting as a member of the media. The October 30, 2020 memorandum also directed that, when an unlawful assembly order is given and a dispersal order made, the Incident Commander and Public Information Officer (PIO) establish an area for the media remain and observe. A copy of the October 30, 2020 document is attached at Exhibit B. On information

and belief, Plaintiff alleges that neither the Incident Commander nor a Public Information Officer for the LAPD established such an area and that, in fact, no PIO was on site when the individual named defendants freely battered Plaintiff and denied her constitutional and statutory rights.

31. The fact of the matter is LAPD officer's assaulted and battered Ms. Berg in the course of violating her constitutional and statutory rights as a member of the press. The officers who engaged in this unlawful conduct were not adequately trained on the applicable law, if they were trained at all.

## VII. MONELL ALLEGATIONS

31. The City of Los Angeles, acting through the Los Angeles Police Department and Chief Michel Moore, failed to conduct training on the rights of members of the press at protests. More specifically, the LAPD failed to enact an adequate policy or convey that policy to it employees to ensure the protection of the rights protected in SB 98 and California Penal Code §409.7.

32. The Defendant City failed to have adequate policies to inform its officers on the lawful presence of members of the press at protests and, to the extent it had any such policies, failed to train officers on those policies. As a consequence of the City's and Chief Moore's failure, officers assaulted members of the press, including Plaintiff, causing physical harm and fear to journalists who were just doing their jobs.

33. In addition to the obvious lack of, and necessity for, training, once notified of the deliberate actions of LAPD officers done in violation of the law, the LAPD, at the direction of Chief Michel Moore and/or his delegated personnel, failed to discipline the individual officers who denied Plaintiff her rights as a member of the press and deliberately assaulted and battered her multiple times.

34. Defendants City and Moore had either actual or constructive knowledge of the different policies, practices, and customs alleged in the paragraphs above and the foreseeable consequences of the failure to implement and train on these state statutes and the rights they afforded to members of the press at

protests. Defendants City and Moore also acted or failed to act with deliberate indifference.

35. Defendants' acts were willful, wanton, malicious, oppressive, and done with conscious or reckless disregard, causing harm to Plaintiff.

36. All claims for relief are asserted against all Defendants unless otherwise stated.

## VIII. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (First and Fourteenth Amendments to the U.S. Constitution. 42 U.S.C. § 1983 for damages; California Constitution Art. I, §2a; California Penal Code §409.7)

37. Plaintiff realleges and incorporates herein by reference the preceding and any subsequent paragraphs in this Complaint.

38. The First Amendment guarantees the right of the press to access coverage of public officials, especially when they engage in law enforcement conduct in public fora. In response to the significant and unlawful restrictions against the exercise of this most fundamental right by the Defendants in recent years, the California Legislature passed, and Governor Newsom signed, Senate Bill 98 in 2021. Senate Bill 98 added Section 409.7 to the Penal Code as follows, establishing requirements to permit press access to areas of police actions as described more fully in paragraph 28, hereinabove.

39. Significantly, this statute expressly prohibits law enforcement from assaulting members of the press to prevent, interfere or obstruct them from "gathering information for communication to the public." Plaintiff was not engage in any unlawful activity in the course of her press activities at this event.

40. In doing the acts complained of herein, Defendants violated California Penal Code 409.7, depriving Plaintiff of her right under the law and causing her harm as a direct and proximate result of their actions.

## SECOND CLAIM FOR RELIEF

### Violation of the Bane Act (Cal. Civil Code § 52.1)

41.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.  The federal and state constitutions guarantee the right to freedom of the press, as well as to be free from unnecessary and excessive force by law enforcement officers. Defendants, by engaging in the wrongful acts and failures to act alleged above, denied these rights to Plaintiff by threats, intimidation, or coercion, to deter, prevent and in retaliation for the exercise of Plaintiff's First Amendment rights, in violation of Cal. Civ. Code § 52.1.

42.     California Civil Code, Section 52.1, known as the Tom Bane Civil Rights Act, provides that : "if a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States" may prosecute an action "for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct." Cal. Civ. Code § 52.1.

43.     As alleged herein, LAPD unlawfully used force and the threat of force against Plaintiff to intimidate her and interfere with Plaintiff's constitutional right to document public events as a member of the press.

44.     By striking and shoving Plaintiff while she exercised her First Amendment and statutory rights as a member of the press to document Defendants' action, LAPD officers used threat and intimidation to interfere with Plaintiff's rights secured under the Constitution of the United States, the Constitution of the State of California, and the statutory laws of the State providing protection to Plaintiff and other members of the press at protests.  The use of any force, let alone

unreasonable force, by Defendants was a substantial factor in causing the violation of rights and attendant harm endured by Plaintiff.

45. Defendant City is liable for the wrongful conduct of its employees and its agents through the doctrine of respondeat superior and vicarious liability. Defendants' actions, as set out above, constituted interference by threat, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of California in violation of Cal. Civil Code §52.1. The violation of § 52.1 includes abuses of Plaintiff's rights delineated in this Complaint.

46. As a direct and proximate result of the aforementioned acts or omissions of Defendants, Plaintiff is entitled to injunctive relief to require Defendants to end its unlawful policies, practices and customs and of Defendants that caused the violation of Plaintiff's right of the press under the federal and state constitutions and statutory law.

47. Plaintiff is entitled to an injunction pursuant to California Civil Code §52.1 and to damages pursuant to Civil Code §§ 52 and 52.1.

48. The conduct of Defendants was willful, wanton, malicious, and done with conscious or reckless disregard, causing harm to Plaintiff.

### THIRD CLAIM FOR RELIEF
### (Battery by a Police Officer (California Civil Code §43)

49. Plaintiff re-alleges and incorporates by reference the preceding and subsequent paragraphs as though fully set forth herein.

50. Defendants used force against Plaintiff repeatedly in the course of denying her the rights guaranteed by the First Amendment and California Penal Code 409.7(a) *et seq.* Defendants, by the actions of the officers of the Los Angeles Police Department, intentionally touched Plaintiff without her consent and without lawful justification.

51. As a direct and proximate result of the aforementioned acts or omissions, Plaintiff sustained and incurred damages including pain and suffering.

52.	The use of such force by the LAPD officers was a substantial factor in causing harm to Plaintiffs.

53.	The **CITY** is liable for the actions of the individual Defendants through respondeat superior.

## FOURTH CLAIM FOR RELIEF
### (Assault)

54.	Plaintiff re-alleges and incorporates by reference the preceding and subsequent paragraphs as though fully set forth herein.

55.	The individual defendants acted with the intention to cause harmful or offensive contact with Plaintiff.

56.	At the time of the events giving rise to this action, Plaintiff reasonably believed that she was about to be touched in a harmful or offensive manner or threatened to touch in a harmful or an offensive manner, both before and after she was repeatedly battered by the individual Defendants;

57.	Based on the actions of the individual Defendants, it reasonably appeared to Plaintiff that Defendants were about to carry out the threat

58.	Plaintiff did not consent to the Defendants' conduct

59.	Defendants' actions were the direct and proximate cause, and a substantial factor, of the harm to Plaintiff.

60.	The **CITY** is liable for the actions of the individual Defendants through respondeat superior.

## IX.  REQUEST FOR RELIEF

Wherefore, Plaintiff seeks judgment as follows:

1.	A preliminary and permanent injunction restraining Defendants from engaging in the unlawful and unconstitutional actions detailed above and retaining Court jurisdiction to enforce the terms of the injunction;

2.	A declaratory judgment that Defendants' alleged conduct violated Plaintiff's rights under the federal and state Constitution and statutory laws;

3. General and compensatory damages for Plaintiff for the violations of her federal constitutional and statutory rights, pain and suffering, all to be determined according to proof;

4. An award of attorneys' fees pursuant to 42 U.S.C. § 1988 and Cal. Civil Code §§ 52(b) & 52.1(h) and Cal. Code of Civ. Proc. § 1021.5;

5. Costs of suit;

6. Pre- and post-judgment interest as permitted by law;

7. Such other and further relief as the Court may deem just and proper.

Dated: February 3, 2023        Law Office of Carol A. Sobel

                    /s/    Carol A. Sobel        .
                    By: CAROL A. SOBEL
                    Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in this action.

Dated: February 3, 2023

                    /s/    Carol A. Sobel        .
                    By: CAROL A. SOBEL
                    Attorneys for Plaintiffs